UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------X
  UNITED STATES OF AMERICA,

v.

ANTHONY RICCARDI,

                              Defendant.
-----------------------------------------------------------X

**<u>ORDER</u>**

21-CR-00197 (PMH)

PHILIP M. HALPERN, United States District Judge:

On June 12, 2025, Defendant Anthony Riccardi, proceeding *pro se*, filed a motion for compassionate release ("Motion") pursuant to 18 U.S.C. § 3582(c)(1)(A). (Doc. 190).[1] Defendant seeks the following alternative relief in his Motion: (1) compassionate relief based on the health circumstances of his wife and co-defendant, Patricia Riccardi, and his role as caretaker to his son; (2) a judicial recommendation to the Bureau of Prisons ("BOP") that he immediately serve the remainder of his sentence in home confinement; (3) a judicial recommendation to the BOP that he be transitioned to home confinement upon the completion of the Residential Drug Abuse Program ("RDAP") at FCI Cumberland; or (4) clarification that his surrender date is no earlier than October 1, 2025 after Mrs. Riccardi is released from all BOP custody, including her halfway house and home confinement programs. (Doc. 190 at 8-9). On June 17, 2025, the Government filed its response to the Motion. (Doc. 192). On June 24, 2025, Plaintiff's reply papers were filed. (Doc. 193).

For the reasons set forth below, the Motion is DENIED.

_____

[1] Citations to this document correspond to the pagination generated by ECF.

**BACKGROUND[2]**

From 2015 through 2019, Employee Benefit Solutions LLC ("EBS") offered a variety of health insurance-related services to clients from its offices in Wilton, Connecticut. Defendant served as the Executive Vice President and co-owner of EBS from 1997 until 2020. EBS clients would typically pay the full price of their share of employee healthcare claims as they occurred. EBS acted as a third-party claims administrator to receive, process, and pay healthcare claims to medical providers on a client's behalf in exchange for fees.

From 2015 to 2019, EBS served as a claims administrator for an auto-dealership chain ("Company-1") headquartered in Westchester County. Defendant and his co-conspirators engaged in fraud by misappropriating $17.87 million in Company-1 funds to pay for EBS's operating costs and Defendant's personal expenses, including his home mortgage expenses and a personal credit card account with expenses related to boating and golf. The scheme also involved the creation of false and fraudulent "bumped up" check registers sent to Company-1 with inflated or non-existent healthcare claims, including at Defendant's direction, the slow payment and non-payment of legitimate claims.

EBS's Vice President of Client Services, Vanessa Battle, was responsible for compiling the Company-1 check registers and printing the checks that were meant to be mailed to various healthcare providers as payment for Company-1 employee health expenses. Once printed, however, Ms. Battle simply held the checks in a locked drawer until she was instructed to mail them by Mr. Riccardi or Erin Verespy, who was hired as EBS's Chief Financial Officer in 2017.

---

[2] The Court draws the background facts principally from the Presentence Investigation Report, revised May 11, 2023, prepared in this case in connection with Defendant's sentencing ("PSR").

EBS never mailed the majority of the claim checks to healthcare providers. The small fraction of payments that EBS did make for Company-1 were substantially delayed and would correspond with claims by Company-1's senior management or the providers that most frequently complained.

Defendant and his co-conspirators began an effort to conceal and perpetuate their fraud on Company-1 by applying for multiple fraudulent bank loans and merchant cash advances. They also agreed to open a number of bank accounts in the name of a fake company called "Integrated Computing." The co-conspirators then applied for multiple fraudulent loans under the auspices of financing the purchase of upgraded billing software from Integrated Computing.

Defendant was involved in the decision-making process about whether to pay certain outstanding healthcare claims and how to divert the Company-1 fiduciary funds. With respect to the fraudulent loan applications, Defendant played a role in strategizing and planning for the fraudulent loans. With respect to the Integrated Computing bank fraud scheme, Defendant signed the loan applications as a co-owner of EBS.

As EBS's financial condition deteriorated, Defendant directed his co-conspirator, Ms. Verespy, to salvage their fraudulent schemes and identify other revenue generating opportunities. Overall, Defendant was responsible for causing a loss of $14,870,653.36 to the various entities involved in these fraudulent schemes which caused a financial hardship to numerous victims. In addition, Defendant was a leader of the criminal activity.

On February 21, 2023, Defendant pled guilty to Count One of an Indictment charging him with conspiracy to commit wire fraud and bank fraud in violation of 18 U.S.C. §§ 1343, 1344 and 1349. On August 20, 2024, Defendant appeared before this Court for sentencing. Defendant's Sentencing Guidelines Range was calculated at 188-235 months' imprisonment. After addressing the nature and circumstances of the offense, and the history and characteristics of the Defendant,

the Court sentenced Defendant to a below-Guidelines term of 120 months of imprisonment. The Court further ordered that "Mr. Riccardi will begin to serve his term of imprisonment ten (10) days after Patricia Riccardi (21cr197-2) (PMH) ends her period of incarceration at a BOP facility. At that time, Mr. Riccardi shall surrender to the designated BOP facility as notified by the United States Marshal, Probation and/or the Pretrial Services Office, or if no BOP facility has been designated, to the United States Marshal at the White Plains Courthouse before 2:00 p.m." (Doc. 188, Judgment).

On December 11, 2023, the Court sentenced Mrs. Riccardi to 30 months' imprisonment following her guilty plea of conspiracy to commit wire fraud and bank fraud. The Court agreed to stagger the sentences of Mr. and Mrs. Riccardi on account of their then ten-year-old son. Defendant advises that "Mrs. Riccardi is currently in a halfway house, with transition to home confinement expected in July 2025 and complete release scheduled for September 2025." (Doc. 190 at 2).

## STANDARD OF REVIEW

"Federal courts are forbidden, as a general matter, to 'modify a term of imprisonment once it has been imposed,' 18 U.S.C. § 3582(c); but the rule of finality is subject to a few narrow exceptions." *Freeman v. United States*, 564 U.S. 522, 526 (2011).[3] Compassionate release is one of the limited exceptions enumerated in 18 U.S.C. § 3582(c). Under the First Step Act, "upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal [or] a failure of the [BOP] to bring a motion on the defendant's behalf," a court may reduce a defendant's sentence, on a defendant's motion, if it finds that "extraordinary and compelling circumstances warrant such a reduction," and that "such a reduction is consistent with the

---

[3] Unless otherwise noted, all case quotations omit internal quotation marks, citations, alterations, and footnotes.

4

applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A)(i).

"The moving party bears the burden of proving that extraordinary and compelling reasons exist."

*United States v. Rodriguez*, No. 19-CR-00012, 2020 WL 2787629, at *3 (S.D.N.Y. May 28, 2020).

"[T]he existence *vel non* of extraordinary and compelling reasons determines only whether a defendant can be considered for release—the existence of such reasons does not mandate release." *United States v. Ebbers*, 432 F. Supp. 3d 421, 430 (S.D.N.Y. 2020); *see also United States v. Israel*, No. 05-CR-01039, 2019 WL 6702522, at *11 (S.D.N.Y. Dec. 9, 2019) ("A court is not required to reduce a sentence on compassionate release grounds, even if a prisoner qualifies for such reduction because of his medical condition. . . . [Section 3582] was drafted using the word 'may,' not 'must.'"). The Court must also consider the "factors set forth in section 3553(a) to the extent that they are applicable." 18 U.S.C. § 3582(c)(1)(A).

The statutory scheme thus requires first that a court determine that a defendant has exhausted his administrative remedies, that "extraordinary and compelling" reasons exist for a reduction in sentence, and that such reduction is consistent with the applicable policy statements issued by the Sentencing Commission. Once these elements are met, the Court must then consider and determine whether the § 3553(a) factors support early release. Application of the § 3553(a) factors requires an assessment of whether the relevant factors "outweigh the extraordinary and compelling reasons warranting compassionate release . . . [and] whether compassionate release would undermine the goals of the original sentence." *Ebbers*, 432 F. Supp. 3d at 431. Those factors include, among others: (1) "the nature and circumstances of the offense and the history and characteristics of the defendant," and (2) "the need for the sentence imposed . . . to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense . . . [and] to afford adequate deterrence to criminal conduct." 18 U.S.C. § 3553(a).

## ANALYSIS

As an initial matter, Defendant's Motion is premature. Courts have routinely held that only defendants who have begun serving their term of imprisonment at a BOP facility are eligible for compassionate release. *See United States v. Fower*, 30 F.4th 823, 827 (9th Cir. 2022) ("when considering the text of the current iteration of the compassionate relief statute and the statute's history, a convicted defendant must be incarcerated before he may seek such relief"); *United States v. Konny*, 463 F. Supp. 3d 402, 404-05 (S.D.N.Y. 2020) (holding that "by its plain terms, the [compassionate relief statute] applies only to those defendants who have begun serving their term of imprisonment at a BOP facility; *United States v. Hodges*, No. 23-CR-00048, 2025 WL 894936, at *7 (D. Me. Mar. 24, 2025) ("By consensus, federal courts have concluded that, absent incarceration, a defendant cannot request 'release,' often framing the procedural deficiency in parallel to a failure to administratively exhaust.").

Defendant has not exhausted his administrative remedies because he has not yet entered a federal prison to start his sentence. Therefore, his request for compassionate release is denied without prejudice as premature.

In any event, Defendant is not entitled to a sentence reduction because consideration of the factors set forth in 18 U.S.C. § 3553(a) does not warrant the relief requested. Even if the Court found Defendant's application sufficient to establish "extraordinary and compelling" reasons for compassionate relief, the Court's determination must then also be supported by the "factors set forth in section 3553(a)." 18 U.S.C. § 3582(c)(1)(A). This, the Court cannot do.

The Section 3553(a) factors do not support compassionate release. These factors, such as "the nature and circumstances of the offense" and "the need for the sentence imposed . . . to reflect the seriousness of the offense, to promote respect for the law . . . to provide just punishment for

6

the offense . . . [and] to afford adequate deterrence to criminal conduct" weigh against his early release. 18 U.S.C. § 3553(a). "Court[s] should be wary of using [a] motion [for compassionate release] to 'correct' the sentencing court's original judgment or introduce unprincipled variance into the execution of duly-imposed sentences . . . ." *Ebbers*, 432 F. Supp. 3d at 430.

The Court imposed a sentence below the Sentencing Guidelines Range. At this time, Defendant has not even begun serving his sentence. Granting Defendant's application for compassionate relief would not reflect the seriousness of Defendant's conduct as a leader in a pervasive fraud scheme spanning multiple years and impacting numerous victims, nor would it promote the need for deterrence. For the reasons stated in detail at Defendant's sentencing, which the Court incorporates by reference, a sentence of 120 months of imprisonment is necessary to achieve those goals. Moreover, Defendant has not shown any reason that the sentence imposed by the Court is no longer sound. Indeed, the sentence fully accounted for the arguments Defendant now raises regarding his family ties and responsibilities with respect to his youngest son, his substance abuse issues and sobriety for several years, and his charitable works. At Defendant's sentencing the Court was aware of, and fully considered, these mitigating factors in fashioning a below-Guidelines sentence. The Court also fully considered the need to avoid unwarranted sentencing disparities.[4] Simply put, the sentence imposed on August 20, 2024 remains the appropriate sentence today.

Defendant's request for a judicial recommendation to the BOP to either immediately serve the remainder of his sentence in home confinement or transition to home confinement upon

---

[4] Defendant argues that the disparity between his sentence and the 66-month sentence received by Ms. Verespy may warrant a sentence modification. (Doc. 190 at 4). However, the Second Circuit has "repeatedly made clear that section 3553(a)(6) requires a district court to consider nationwide sentence disparities, but does not require a district court to consider disparities between co-defendants." *United States v. Bryant*, 976 F.3d 165, 180 (2d Cir. 2020).

completion of RDAP is similarly denied. The Court is not authorized under 18 U.S.C. § 3582(c)(1)(A) to convert a term of imprisonment into a term of home confinement. See *Konny*, 463 F. Supp. 3d at 405. "[T]he authority to place a prisoner in home confinement rests with the BOP under 18 U.S.C. § 3624(c)(2), and the discretion to make such an order lies solely with the Attorney General." *Id.*

Finally, Defendant seeks clarification regarding his surrender date. As pronounced at sentencing and in the Judgment, "Mr. Riccardi will begin to serve his term of imprisonment ten (10) days after Patricia Riccardi (21cr197-2) (PMH) ends her period of incarceration at a BOP facility." (Doc. 188). Defendant represents that Mrs. Riccardi is currently in a halfway house and will then transition to home confinement. The Federal Bureau of Prisons Inmate Locator states that Mrs. Riccardi is currently located at the BOP facility RRM New York and her projected release date is October 14, 2025. (*See* https://www.bop.gov/inmateloc (last visited June 30, 2025)). If the BOP decides, in its discretion, to permit Mrs. Riccardi to serve the remainder of her sentence in home confinement, at that time she will no longer be at a BOP facility. Therefore, consistent with the Court's pronouncement at Defendant's sentencing and the Judgment, Mr. Riccardi shall begin to serve his term of imprisonment ten (10) days after Patricia Riccardi ends her period of incarceration at a BOP facility or ten (10) days after Patricia Riccardi starts home confinement to serve the remainder of her sentence.

## CONCLUSION

Accordingly, Defendant's Motion is DENIED. The Clerk of Court is respectfully directed to terminate the pending motion (Doc. 190), and to mail a copy of this Order to Defendant at 73 Lake Wind Road New Canaan, Connecticut 06840.

SO ORDERED:

Dated:  White Plains, New York
        June 30, 2025

_____
Philip M. Halpern
United States District Judge